UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINALD JOHNSON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>STUART SHERMAN, et al.,<br><br>　　　　　Defendants. | Case No.: 1:19-cv-00984-SAB (PC)<br><br>SCREENING ORDER GRANTING PLAINTIFF LEAVE TO FILE AN AMENDED COMPLAINT<br><br>[ECF No. 1] |

Plaintiff Reginald Johnson is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Plaintiff's complaint, filed July 17, 2019.

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

///

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

The allegations in the complaint deal with conditions at California Substance Abuse and Treatment Facility and State Prison, Corcoran ("SATF") Plaintiff names Stuart Sherman (Warden at SATF), Richard Milan (Supervisor of Building Trades at SATF), and J. Collins (Associate Warden for Business Services at SATF), as Defendants.

SATF was originally constructed approximately 20 years ago. On information and belief, SATF has not undergone any rehabilitation, modification or significant repair since being built.

SATF consists of seven separate yards, each having a design capacity of approximately 500 inmates. Plaintiff is housed at a level two Special Needs Yard (SNY), and there are three separate housing buildings on F-Yard. In addition, each F-Yard contains a separate kitchen and dining facility.

On December 27, 2018, Plaintiff found a foreign object in his food tray, and previously had contaminated water fall from the ceiling into his food tray and on his head. Plaintiff informed the officer working the dining hall that the foreign object was in his tray.

2

1  California is an area that is prone to suffer earthquakes and is an area that receives rain.

2  Plaintiff has been informed, believes and thereon alleges that SATF is built with the use of
defective material or methods of construction, and any and all repairs are made with the use of
substandard materials and/or substandard methods of construction, resulting in ineffective repairs.

Defendants Sherman, Collins and Milan have a statutory and constitutional duty to protect Plaintiff from risk of injury, while he is in the facility F dining hall caused by: (1) suspended ceiling tiles system, or parts thereof, falling onto Plaintiff; (2) electrocution; (3) consumption of contaminated food and drinks; and (4) exposure to mold. Defendants have consciously neglected the physical plant at SATF.

During the rainy season, there is continuous flooding in the dining facility, the visiting facility, the educational facility, the housing unit common areas and the cells themselves. Inmates often awake to the sound of rain actually coming into the cells. Many of the ceiling tiles in the dining facility, each of which is approximately three square feet in area, are missing as a result of the Defendants persistent neglect.

Inside the dining hall, an interior grid suspension system is attached to the ceiling and holds ceiling tiles in place. The tiles sit about twenty feet above the floor. The ceiling tiles are rigid boards approximately four feet long, two feet wide and three quarter inches thick. Electrical appliances are installed inside the dining hall. The rainwater has caused damage the following damage to the F-Facility dining hall: (1) saturating ceiling tiles; (2) breaking ceiling tiles; (3) causing ceiling tiles and/or parts thereof to fall; (4) causing ceiling tiles and/or parts thereof to warp; (5) causing ceiling tiles and/or parts thereof to not sit properly on the grid work; (6) corroding the suspended ceiling tile grid; (7) corroding the fasteners securing the suspended ceiling tile grid to the main ceiling; (8) entering into electrical light fixtures; (9) mold has grown on the ceiling and walls; (10) water damage to the ceiling insulation; (11) water damage to the electrical lighting; (12) water damage to the electrical wiring.

The Facility F dining hall is fitted with a suspended ceiling system manufactured by Armstrong World Industries, Ceiling Tile Division, and/or a comparable manufacturer in quality and function. The ceiling system consists of a metal grid system that holds ceiling tiles. The grid system is

comprised of various metal parts, including main beams, cross tees, hangers, nuts and bolts, and perimeter moldings. The integrity of the entire suspended ceiling depends on the hangers. The manufacturer provides instructions to purchasers to install the ceiling tiles in an area that remains dry, clean and protected from the elements. Each ceiling tile weighs about five pounds when dry but will increase to about twenty pounds when saturated with water. The tiles are not intended to become wet while sitting in their suspended ceiling grid. When the ceiling tiles become wet, they soften and can collapse. To ensure the safety of people, all water damaged ceiling tiles must be removed from the ceiling tile grid work. Some of the suspended ceiling tile grid and fasteners that secure the grid to the ceiling are corroded. The corrosion is visible from the floor of the dining hall through the gaps in the ceiling tiles. Corrosion will deteriorate metal over the long term. The dining hall roof leaks have permitted water to corrode the metal fasteners and the grid work over the past five years. A falling ceiling tile, or part thereof, can cause personal injury to an inmate.

The rainwater runs over electrical appliances in the dining hall then gathers in pools on the floor. The manufacturers of the appliances provide instructions to install these in an area that remains dry, clean and protected from the elements to prevent shock or fire. Prisoners walk and consume their food and drinks in areas where rainwater pools on the floor after it passes over electrical appliances. These conditions present a realistic possibility of electrocution when the water is exposed to a live electrical current.

The dining hall conditions are not isolated incidents, but a pattern that has continued over the past five years. On information and belief, on January 27, 2019, inmate Paul John Denham explained to Defendants that the condition of the leaking E Facility dining hall roof and ceiling damage exposes him to a risk of serious injury. In response, Defendant Richard Milan explained that the prison "has multiple leaks throughout the institution. Due to staffing and budget issues, plant operations cannot keep up with the work orders submitted for leaking roofs. Most of these repairs are time consuming due to the severe damage. The work orders are prioritized by the severity of leaks. Plant operations has submitted special repair request [sic] to Facilities Management in Sacramento for all the leaking roofs at CSATF. Plant Operations will inspect the ceiling tiles in the dining hall and remove any that may fall."

4

Defendants have been aware of the fact that the F-Yard dining facility is infested with vermin for many years. On numerous occasions Plaintiff has observed roaches climbing up the wall. On information and belief, there have been numerous complaints by staff and inmates over the years, all of which have been ignored.

On November 4, 2018, Facility F I.A.C. Executive Body Food Services Chairman Williams stated, the kitchen has a foreign object infestation, black mold on the food-line and restrooms, the "B" section ventilation system is located directly over the food and is blowing out feathers.

Plaintiff was, and continues to be, sickened by the unabated filth and unsanitary conditions in which his food was prepared, handled and served. Defendants have failed and refused to correct the deterioration of the facility and resulting infestation of vermin which endanger Plaintiff's health and safety. Plaintiff was required to seek medical attention for his mental anguish twice, but due to the fact that he is not CCCMS any longer he was not allowed to see a psychiatrist.

## III.

## DISCUSSION

### A. Conditions of Confinement

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan v. Morgensen, 465 F.3d at 1045 (citing Rhodes v. Chapman, 452 U.S. at 347) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. Morgan v. Morgensen, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737 (2002); Rhodes v. Chapman, 452 U.S. at 346.

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir.

2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, <u>Morgan v. Morgensen</u>, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. <u>Farmer v. Brennan</u>, 511 U.S. at 847; <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1150-51 (9th Cir. 2010); <u>Foster v. Runnels</u>, 554 F.3d 807, 812-14 (9th Cir. 2009); <u>Morgan v. Morgensen</u>, 465 F.3d at 1045; <u>Johnson v. Lewis</u>, 217 F.3d at 731; <u>Frost v. Agnos</u>, 152 F.3d 1124, 1128 (9th Cir. 1998).

In <u>Rhodes</u>, the Supreme Court found that in order to state an Eighth Amendment claim, the conditions must "inflict[] unnecessary or wanton pain or is grossly disproportionate to the severity of crimes warranting imprisonment." <u>Rhodes v. Chapman</u>, 452 U.S. at 348-49. The Court cautioned against finding violations based upon "an aspiration toward an ideal environment for long-term confinement." <u>Id.</u> In addition, the Constitution does not mandate comfortable prisons. <u>Id.</u>

Plaintiff's allegations fail to give rise to a claim of deliberate indifference. More specifically, Plaintiff has not stated an Article III controversy for his allegations relating to the roof leaks, falling objects, risk of electrocution and/or vermin infestation. Article III of the Constitution limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const., Art. III, § 2. To establish standing, a plaintiff must show (1) an injury in fact, meaning an invasion of a legally protected interest which is both concrete and particularized, and actual or imminent, not conjectural or hypothetical; (2) a sufficient casual connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision. <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 560-61 (1992) (internal quotation marks and citations omitted). Plaintiff has not alleged that he suffered any injury as a result of the alleged conditions. The mere fact that water dropped on his food on one occasion is insufficient to demonstrate injury. Further, the fact that Plaintiff has observed roaches climbing up the walls is also insufficient to demonstrate injury. Moreover, Plaintiff merely contends that he sickened by the unabated filth and unsanitary conditions in which his food was prepared, handled and served, which is insufficient. General allegations about conditions of confinement do not demonstrate a case or controversy. <u>Lujan</u>, 504 U.S. at 574-75 ("[A] plaintiff raising only a generally available grievance about government—claiming only harm to his and every

citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case of controversy."). Furthermore, Plaintiff acknowledges that Richard Milan indicated that all work orders are prioritized by the severity of leaks, and the plant operations have submitted special repair requests for all the leaking roofs at SATF. In addition, Plaintiff was advised that plant operations would inspect the ceiling tiles in the dining hall and remove any that may fall. This does not demonstrate deliberate indifference, but rather a conscious effort to try to solve the problem to the best of its ability.

## IV.

## CONCLUSION AND ORDER

For the reasons discussed, Plaintiff fails to state a cognizable claim for relief and shall be granted leave to file an amended complaint to cure the deficiencies identified in this order, if he believes he can do so in good faith. See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted). Further, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George, 507 F.3d at 607 (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey v. Maricopa Cnty., 693 F.3d 896, 927 (9th Cir. 2012). Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Within thirty (30) days from the date of service of this order, Plaintiff shall file an amended complaint;
3. Plaintiff's amended complaint shall not exceed twenty-five (25) pages in length; and

///

4. If Plaintiff fails to file an amended complaint in compliance with this order, the Court will recommend to the assigned district judge that this action be dismissed consistent with the reasons stated in this order.

IT IS SO ORDERED.

Dated: __**July 23, 2019**__

UNITED STATES MAGISTRATE JUDGE